FIRST NATIONAL BANK OF JOLIET, Plaintiff-Appellee, v. ASSOCI-ATED STOCKDALE COMPANIES, Defendant-Appellant.

Third District   No. 3—90—0730

Opinion filed August 14, 1991.

Gomien, Root & Rigazio, of Morris (Paul E. Root, of counsel), for appellant.

Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet (A. Michael Wojtak, of counsel), for appellee.

JUSTICE GORMAN delivered the opinion of the court:

The plaintiff, First National Bank of Joliet, brought an action for declaratory judgment against the defendant, Associated Stockdale Companies, Inc. (Stockdale), seeking a declaration of whose perfected security interest in certain crops was entitled to priority. The circuit court entered a declaratory judgment in favor of the bank. Stockdale now appeals. We affirm.

Lyle Hecht, Kimberly Hecht, Edward Hecht, and Alice Hecht signed a security agreement dated June 1, 1983, giving the bank a security interest in crops growing or to be grown on specified parcels of land in Grundy County. The security interest was given to secure the payment of any and all indebtedness of Edward and Lyle Hecht to the bank, whether then existing or thereafter arising. On June 29, 1983, the bank filed with the recorder of deeds of Grundy County a financing statement noting the debtors, the secured party, and the collateral that had been the subject of the security agreement. (A continuation of this financing statement was filed on March 4, 1988.)

The Hechts signed two promissory notes dated August 22, 1985, with the bank as payee. Both notes were renewals of previously existing indebtedness, and both were due and payable on February 22, 1986. The principal amounts of the notes were $159,000 and $416,684.83. (The record indicates that the indebtedness represented by these notes has never been satisfied.)

Stockdale sold to the Hechts fertilizer and other supplies needed for production of the 1986 crops. It sold these supplies on open account between November 18, 1985, and June 23, 1986. On October 3, 1986, Stockdale obtained a security agreement from Lyle Hecht granting it a security interest in the 1986 crops to secure payment of the indebtedness for the supplies. A financing statement was duly filed with the recorder of deeds of Grundy County by Stockdale on October 6, 1986.

The Hechts planted their cash crops between April 25, 1986, and May 19, 1986.

On March 18, 1987, the bank brought this declaratory judgment action to determine whose security interest in the Hechts' 1986 crops was superior, its or Stockdale's. The bank and Stockdale had previously agreed to hold in escrow some of the proceeds from the sale of the Hechts' 1986 crops, with disposition of that sum to depend on the outcome of the declaratory judgment action. The bank and Stockdale entered into a stipulation of facts. Based on that stipulation and after considering the written briefs and arguments of the parties, the circuit court decided that the bank's security interest was superior, and entered judgment accordingly.

The sole issue presented is whether section 9—312(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1985, ch. 26, par. 9—312(2)) gives Stockdale's perfected security interest in the Hechts' 1986 crops priority over the bank's perfected security interest in those crops.

■ Section 9—312(2) of the Uniform Commercial Code states as follows:

"A perfected security interest in crops for new value given to enable the debtor to produce the crops during the production season and given not more than three months before the crops become growing crops by planting or otherwise takes priority over an earlier perfected security interest *to the extent that such earlier interest secures obligations due more than six months before the crops become growing crops by planting or otherwise,* even though the person giving new value had knowledge of the earlier security interest." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 26, par. 9—312(2).

Stockdale argues that in order to give this provision any practical effect, the time when an "obligation" is deemed "due" ought to be the time when value is originally given to the debtor whereby the debtor incurs the obligation. Stockdale argues that the term "obligations" in this provision should not be interpreted to include promissory notes merely embodying antecedent debts. Stockdale reasons that since the original indebtedness to the bank (that eventually became embodied in the promissory notes) had been incurred long before six months prior to the planting of the 1986 crops, Stockdale's security interest for supplies provided in the three-month period prior to planting has priority over the bank's security interest for indebtedness represented by the promissory notes.

Stockdale argues alternatively that "due" should simply be interpreted as "due and owing" rather than "due and payable." Stockdale reasons that since the bank's promissory notes were "due and owing" on August 22, 1985, more than six months before the 1986 crops were planted, Stockdale's security interest for supplies provided in the three-month period prior to planting has priority over the bank's security interest for indebtedness represented by the promissory notes.

A number of Federal and sister State cases have applied section 9—312(2) of the Uniform Commercial Code and have consistently interpreted the term "due" therein as meaning "overdue." (See, *e.g., Salem National Bank v. Smith* (7th Cir. 1989), 890 F.2d 22; *In re Connor* (8th Cir. 1984), 733 F.2d 523; *United States v. Minster Farmers Cooperative Exchange, Inc.* (N.D. Ohio 1977), 430 F. Supp. 566; *McCoy v. Steffen* (1987), 227 Neb. 72, 416 N.W.2d 16.) In *Decatur Production Credit Association v. Murphy* (1983), 119 Ill. App. 3d 277, 456 N.E.2d 267, the appellate court implicitly adopted the position that the term "due" in section 9—312(2) means "overdue." None of these opinions discusses the purposes the drafters of section 9—312(2) sought to achieve by this section, and the present parties do not

present any authority to shed light on why the drafters chose the words they chose.

We recognize that if "due" in section 9—312(2) means "overdue," that section gives less benefit to farmers seeking crop production financing (and those wishing to provide such financing) than if "due" means "due and owing." While previously secured lenders are placed at great advantage in this situation, farmers are not without business options to counter an unscrupulous lender in most instances. On the other hand, a contrary interpretation would probably make it harder to get credit in the first instance, and would probably require lenders to be more aggressive in enforcing their rights in collateral and in doing so at an earlier time. In short, we see no happy medium interpretation here, and no particular policy reason to interpret the term one way or the other.

■ Given that courts have consistently interpreted "due" in section 9—312(2) as meaning "overdue," that the legislature has not seen fit to amend this provision at any time since it was first adopted in 1962, that there has been no showing that the drafters of this provision had a purpose for it inconsistent with this interpretation, and that the drafters could have easily chosen another word (such as "created") to make clear a contrary interpretation, the trial court correctly interpreted "due" as meaning "overdue" in this provision.

Since the due dates of the bank's promissory notes at issue fell within the six-month period prior to the planting of the Hechts' 1986 crops, Stockdale cannot claim that its security interest has priority over that of the bank by virtue of section 9—312(2). As no other basis for priority has been argued by Stockdale, the general priority rule of section 9—312(5)(a) (Ill. Rev. Stat. 1985, ch. 26, par. 9—312(5)(a)) applies. This rule, as applied to the facts of the present case, gives priority to the security interest of the first of two secured creditors to file a financing statement covering the collateral. Since the bank filed its financing statement earlier than did Stockdale, the trial court did not err in entering its declaratory judgment in favor of the bank.

Affirmed.

STOUDER, P.J., and HAASE, J., concur.